Argued February 4, decided March 2, 1909.

## PACIFIC RY. & NAV. CO. v. ASTORIA & C. R. R. CO.

[99 Pac. 1044.]

RAILROADS—LOCATION OF ROAD—CONFLICTING LOCATIONS.

1. Equity will protect a railroad company's rights acquired by a prior location of a route for its road against trespasses thereover by another company seeking to use the same route, but such prior rights must be exercised within a reasonable time, and are subject to crossing rights of another company.

RAILROADS—LOCATION OF ROAD—DETERMINATION OF ROUTE.

2. As the statute (Section 5055, subd. 6, B. & C. Comp.) providing that articles of incorporation of railroad companies shall specify the termini of a proposed road does not require any designation of the route between such termini, a railroad may determine the route of its road between the termini named in its articles of incorporation, and the exercise of this power will not ordinarily be controlled by the courts.

RAILROADS—LOCATION OF ROAD.

3. A railroad company may lawfully locate its road over the most advantageous and feasible route between the termini named in its articles of incorporation, as provided by Section 5055, subd. 6, B. & C. Comp., though a portion of the proposed route described in its articles of incorporation is geographically impossible.

RAILROADS—LOCATION OF ROAD—CONFLICTING LOCATIONS.

4. In a suit to enjoin defendant railroad company from interfering with plaintiff's route, evidence *held* to show that a route located by plaintiff was its main line between the termini named in its articles of incorporation, and that it was occupying only one of two feasible routes.

From Tillamook: GEORGE H. BURNETT, Judge.

Statement by MR. CHIEF JUSTICE BEAN.

This suit involves the conflicting claim of two railroad companies to use and occupy the pass around Garibaldi Point. in Tillamook County, for railroad purposes. The plaintiff corporation was organized in October, 1905, to construct, equip, and operate a line of railroad between Portland and Astoria, by way of Hillsboro, thence in a northwesterly direction, following the valley of Dairy Creek and the Nehalem River, to a point at or near the junction of Humbug Creek and the Nehalem River; thence by way of Humbug Creek and the Lewis and Clark River to Astoria, or "over any other feasible and practicable route between the termini of said line of railroad above given," and also to construct, equip, and operate a line of railroad from Portland to the junction of Humbug Creek and the Nehalem River by way of Hillsboro; thence in a general westerly direction, along the valleys of Gale's Creek and Wilson River, passing through Tillamook to Nehalem Bay; thence in a general northerly direction "along the shores of Tillamook Bay and by the valleys of Miami and Foley Creeks to, or in the neighborhood of, Nehalem City"; thence in a northeasterly direction by way of the valley of the North Fork of the Nehalem River to the terminus thereof, being the junction of Humbug Creek and Nehalem River, there to connect with the line of railroad described in section 1 of the articles of incorporation, or "said line of railroad

may and shall be located between the termini above given by any other practicable route therefor." The defendant company was organized in 1895 to construct and operate a line of railroad from Portland to Astoria; thence westerly to Warrenton, and a branch line from some convenient point on its main line at or near Warrenton, running thence southerly to Seaside; thence in a general southerly direction at or near the coast of the Pacific Ocean to some point on the Nehalem River, at or near its mouth; thence southerly to a point upon Tillamook Bay, to be hereafter determined. Immediately after its organization the plaintiff commenced the actual location and construction of its road from Hillsboro northwesterly toward Astoria, and, at the time of the commencement of this suit, had about 20 miles constructed and in operation northerly from Hillsboro, and had located a part of its line from Tillamook north toward Nehalem Bay, and was engaged in the actual construction thereof. The proposed route of the road from Hillsboro to Tillamook, as outlined in its articles of incorporation, was by way of Wilson River, thus approaching Tillamook Bay from the east and south, and passing along the bay through Bay City and Hobsonville to Nehalem Bay, seven or eight miles north of Tillamook Bay. But upon an examination and survey of the proposed route it was found not to be feasible, and the company decided to approach the Tillamook country by a more northerly route, connecting with the Astoria line at or near Buxton, and thence along Salmonberry Creek to its junction with the South Fork of the Nehalem River; thence down the Nehalem River to the mouth of Foley Creek, a few miles above Nehalem Bay; thence up Foley Creek to its headwaters and over the divide to the waters of the Miami River; thence down such river to Tillamook Bay; thence up the bay through Hobsonville and Bay City to Tillamook City, and to get out of the Tillamook country, and to the terminus of its Tillamook line at Humbug Creek, by connecting with the

Salmonberry Creek line, at the mouth of the Miami River and proceeding north around Garibaldi Point to Nehalem Bay; and thence up the North Fork of the Nehalem River to the terminus mentioned. While the plaintiff was engaged in surveying and locating its road over the Foley Creek pass and around Garibaldi Point in September, 1906, the defendant put a force of surveyors in the field to locate its route from Seaside south to Tillamook Bay. The lines of the two companies, as surveyed and located at Garibaldi Point, conflict in such a way that it is impracticable to build both of them, and the plaintiff, claiming that its location was prior in time to that of defendant, brought this suit to enjoin and restrain defendant from interfering with its use of the route as located over the disputed territory. The court below found from the testimony that plaintiff's line was located prior to that of defendant, but as there were only two practicable routes for a railroad from the Tillamook country north —one by way of Garibaldi Point and the other over the Foley Creek pass—that it was inequitable and unjust to award plaintiff a prior right to both, and entered a decree in favor of defendant, and plaintiff appeals.

REVERSED.

For appellant there was a brief over the names of *Mr. Zera Snow* and *Mr. Wallace McCamant,* with an oral argument by *Mr. Snow.*

For respondent there was a brief over the names of *Messrs. Carey & Kerr, Mr. Omar C. Spencer* and *Mr. George C. Fulton,* with oral arguments by *Mr. Carey, Mr. Kerr,* and *Mr. Spencer.*

Opinion by MR. CHIEF JUSTICE BEAN.

1. That plaintiff's line around Garibaldi Point was first surveyed and located is clearly shown by the testimony, and it is not seriously controverted by defendant. The evidence shows that plaintiff's line was surveyed and located and formally adopted by its board of directors

before the preliminary survey was completed by defendant's engineers and therefore plaintiff has a prior right for a reasonable time to the use of the line covered by its location for railroad purposes, unless by reason of the matters hereinafter referred to it should not be granted such privilege.    There is no statute in this State governing the matter of a conflict between rival railroad companies over a proposed route, but the general rule is that, since such a corporation is performing a public function, equity will intervene to protect rights acquired by prior location against trespasses thereover by another road which seeks to locate its line over the same route. 2 Lewis, Eminent Domain, § 306; Pierce, Railroads, p. 157; *Railway Co.* v. *Alling*, 99 U. S. 463 (25 L. Ed. 438) ; *Chesapeake & O. Ry. Co.* v. *Deepwater Ry. Co.*, 57 W. Va. 641 (50 S. E. 890) ; *Kan. R. Co.* v. *Glen. J. R. Co.*, 45 W. Va. 119 (30 S. E. 86) ; *Nicomen Boom Co.* v. *North Shore Boom & Driving Co.*, 40 Wash. 315 (82 Pac. 412) ; *Utah, N. & C. R. Co.* v. *Utah & C. Ry. Co.*, (C. C.) 110 Fed. 879; *Williamsport R. Co.* v. *Philadelphia R. Co.*, 141 Pa. 407 (21 Atl. 645: 12 L. R. A. 220).    The doctrine that priority of location confers priority of right to occupy and use the ground covered by such location is a protection against longitudinal construction alone, and not against crossing rights.    Nor does it confer a perpetual right, but is a protection for a reasonable time only, and any decree giving one company a prior right over another by reason of a prior location should be limited to what may be deemed under the circumstances, a reasonable time in which to construct the proposed road.

2. It is claimed by defendant that plaintiff is not entitled to a decree awarding it a prior right to occupy the pass around Garibaldi Point, for the reason that, under its charter powers, it has no authority to locate or construct a railroad at that point.    The statute of this State provides that articles of incorporation of railroad companies shall specify the termini of the proposed road

(Section 5055, sub. 6, B. & C. Comp.), but it does not require any designation of the particular route between such termini. It was therefore within the power of plaintiff and the discretion of its governing board to determine the course and direction of its road between the two given termini, and the exercise of this power will not ordinarily be controlled by the courts. *Central R. R. Co. of N. J.* v. *Pennsylvania R. Co.*, 31 N. J. Eq. 475; *State* v. *Martin*, 51 Kan. 462 (33 Pac. 9); *Bonaparte* v. *Camden & A. R. Co.*, 3 Fed. Cas. 821; *Walker* v. *Mad River & Lake Erie R. Co.*, 8 Ohio, 38.

3. By its articles of incorporation plaintiff specified the two terminal points of what may be designated as its Tillamook division, as the City of Portland and the junction at Humbug Creek with the Nehalem River, and in our opinion it may lawfully locate its road over any available route which it might deem feasible or advantageous between the termini thus named. It is true that in its articles of incorporation it is stated that the proposed road is to pass through Tillamook to Nehalem Bay, and thence along the shores of Tillamook Bay by the valleys of the Miami and Foley Creek to and in the neighborhood of Nehalem City. But this was evidently an error, because it is geographically impossible. Nehalem Bay is seven or eight miles north of Tillamook Bay, and it would be impossible to run from Nehalem Bay along the shores of Tillamook Bay or through the valleys of the Miami and Foley Creek, so this statement in the articles of incorporation may properly be treated as mere surplusage without affecting the right of plaintiff company to locate and establish its road from Tillamook to Nehalem Bay over the most practicable and feasible route.

4. It is also claimed that the route from the mouth of the Miami River to Nehalem Bay is a branch or spur line, and that plaintiff has no authority, under its articles of incorporation, to locate, establish, or operate such a

line; but this contention is not supported by the testimony. The line of road from Tillamook City north through Bay City and Hobsonville, and thence up the Miami to its headwaters, and down Foley Creek to Nehalem River, is a part of plaintiff's route from Hillsboro to Tillamook, and, so far as this record discloses, is no part of its main line out of the Tillamook country northerly toward the junction of Humbug Creek and Nehalem River. Some of the maps of the survey from the mouth of the Miami to Nehalem Bay were designated by the surveyors as the Coast Line route, but this was for convenience and without authority of plaintiff, and there is no evidence that the company itself treated or intended the route around Garibaldi Point as a branch line. Indeed, its record and the testimony of its officers indicate that it considered that to be its main line northerly out of the Tillamook country.

Again, it is contended that there are but two practicable routes for a railroad north from Tillamook, and that the plaintiff ought not to be permitted to occupy both, to the exclusion of a rival and competing road, and this was the view of the trial court. There is no evidence, so far as we can discover, indicating that plaintiff intends to reach Nehalem Bay by way of the Miami River and Foley Creek. As already said, that is a part of its line from Tillamook to Hillsboro, and therefore it cannot be said from the testimony that it intends to occupy both of these passes for the purpose of reaching the same terminal point. But there is another reason why this question ought not to be determined in this case. Such defense is not pleaded by the defendant, and no issue is tendered upon this question. There is some testimony in the record indicating that there are, in fact, two feasible routes north from Tillamook, but this was not an issue in the case, and clearly ought not to be the basis for a decree in this suit.

It is also claimed that the plaintiff was not acting in good faith in surveying and locating the line of its railway around Garibaldi Point; but this contention is not supported by the testimony. It is true the evidence indicates there was a race between plaintiff and defendant for the occupation of this point, and that plaintiff's location was first in time, but there is nothing in the record to indicate that it was not acting in perfectly good faith and with an honest intent to build its road on the line so located.

Upon the whole record, therefore, we are of the opinion that plaintiff's location over the disputed territory was prior in time to that of defendant, and that it is entitled to be protected in the route thus acquired for a reasonable time, to be fixed in the decree, subject to the crossing right of defendant company.

REVERSED.